**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Charles WILLIAMS, Defendant–Appellant.**

No. 99–50304.

D.C. No. CR–97–00038–GLT–4.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 2001.

Decided Sept. 10, 2001.

Before HUG and B. FLETCHER,
Circuit Judges, KING, District Judge.[1]

1. The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

## MEMORANDUM [2]

Charles Williams appeals his conviction and sentence after pleading guilty to one count of aiding and abetting a bank robbery in violation of 18 U.S.C. §§ 2(a), 2113(a). We have jurisdiction under 28 U.S.C. § 1291, and affirm.

Because the parties are familiar with the factual and procedural history of this case, we do not recount it here except as necessary to explain our decision.

### 1. Denial of reduction for acceptance of responsibility

Williams challenges the district court's denial of a 3–point reduction for acceptance of responsibility. "We review for clear error a district court's decision to deny a reduction for acceptance of responsibility." *United States v. Fleming*, 215 F.3d 930, 939 (9th Cir.2000). "In reviewing a district court's determination as to a defendant's acceptance of responsibility, we must afford the district court 'great deference' because of its unique position to evaluate a defendant's acceptance of responsibility." *United States v. Scrivener*, 189 F.3d 944, 948 (9th Cir.1999) (citations and internal quotations omitted). A preponderance of the evidence standard applies to the district court's factual findings. *See United States v. Collins*, 109 F.3d 1413, 1420 (9th Cir.1997).

Section 3E1.1(a) of the Sentencing Guidelines provides for a reduction for acceptance of responsibility. A defendant must "clearly demonstrate[ ] acceptance of responsibility for his offense." *Id.* "One example of inconsistent conduct that weighs against a finding of acceptance of responsibility is a defendant's attempt to

2. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

minimize his own involvement in the offense." *Scrivener*, 189 F.3d at 948 (citation omitted).

Williams denied—contrary to the factual basis of his plea agreement—that he actually entered the bank. He claimed to the probation officer that on the day of the robbery he only intended to drive around, never got out of the van, did not know where they were going, and did not take it seriously when the others discussed the robbery.

Accordingly, the district court reasoned that Williams attempted to minimize his role in the bank robbery. Much was made in the sentencing proceedings of whether Williams actually entered the bank. The district court weighed the evidence after an evidentiary hearing and found by a preponderance of the evidence that Williams had entered the bank and thus had not accepted responsibility. Substantial evidence in the record supports the district court's finding.

■ Williams argues that "entry" was not an element of the offense to which he pled (aiding and abetting a bank robbery) and was likewise not "relevant conduct" because he would have been guilty whether he entered or not. True, "entry" was not an element of the offense as the indictment had described it (even if Williams aided *others* in entering the bank). Title 18 U.S.C. § 2113(a) has at least two ways to commit bank robbery, only one of which requires "entry." However, this does not mean "entry" was not otherwise "relevant conduct."

Williams contends that "entry" was not "relevant conduct" because, according to the application notes of the guidelines, "relevant conduct" is limited to conduct comprising the offense of conviction. *See* U.S. Sentencing Guidelines Manual § 3E1.1, cmt. n. 1. Nevertheless, whether Williams entered the bank was critical to

determining whether or not he was affirmatively minimizing his role in the robbery. He told the probation officer he didn't intend to participate, he only intended to "hit corners" (i.e., drive around), he didn't know where they were going, that the van was only following the jeep, that a robbery had been discussed but he did not take it seriously, and that he sat in the back seat. He certainly attempted to "minimize his own involvement in the offense." *Scrivener*, 189 F.3d at 948.

The Guidelines' concern in not requiring admission of relevant conduct beyond the offense of conviction is primarily with not requiring admission of *other* crimes or criminal behavior as a prerequisite for a point reduction. *See, e.g., United States v. Rutledge*, 28 F.3d 998, 1002 (9th Cir.1994) ("conditioning an acceptance of responsibility reduction upon the defendant's admission of conduct for which he had not been convicted could violate his Fifth Amendment rights") (citation omitted). Here, whether Williams entered the bank was an issue regarding conduct occurring during the robbery itself, not a separate crime.

Further, the application notes to section 3E1.1(a) refer to "relevant conduct for which the defendant is accountable under § 1B1.3." In turn, section 1B1.3(a) provides that a sentence's base offense level "shall be determined on the basis of [acts or foreseeable acts of others] that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." Under this section, entry of the bank is "relevant conduct" in this case because entry was an act "that occurred during the commission of the offense of conviction." *See Rutledge*, 28 F.3d at 1001–02 (holding that falsely denying "relevant conduct" which a defendant could

otherwise remain silent about may be considered in denying reduction for acceptance of responsibility).

*United States v. Vance*, 62 F.3d 1152 (9th Cir.1995) is distinguishable. In *Vance*, the district court improperly considered the defendant's refusal to talk to the probation officer (done on advice of counsel) as well as that defendant had filed a motion to suppress evidence (exercising a constitutional right) and his use of the passive voice in describing his crime. *See id.* at 1158–60. *Vance* is also distinguishable because it was not a "relevant conduct" case. *See id.* at 1159 ("There was no 'relevant conduct' issue in this case"). Moreover, the defendant in *Vance* did not attempt to minimize his involvement in the crime.

■ Accordingly, we affirm the denial of acceptance of responsibility. The district court correctly concentrated on whether Williams entered the bank. The finding that he did not accept responsibility was not clearly erroneous.

### 2. Breach of Plea Agreement.

#### A. Failure to recommend a reduction for acceptance of responsibility.

Williams next argues that the government breached its plea agreement when it failed to recommend a 3–point reduction for acceptance of responsibility. This argument was not specifically raised at the trial level. The court ordinarily will not reach claims raised for the first time on appeal. *See United States v. Flores–Payon*, 942 F.2d 556, 558 (9th Cir.1991) ("an alleged breach of the plea agreement is precisely the type of claim that a district court is best situated to resolve").

In any event, this argument is subsumed in the previous issue. The government agreed to recommend a three-level reduction, if Williams "accepted responsibility."

As just analyzed, Williams minimized his role in the offense and did not accept responsibility. It follows that the government was not required to recommend a reduction and thus there was no breach of the plea agreement.

#### B. Requesting upward adjustment for use of dangerous weapon.

■ Williams contends that the government breached the plea agreement when it requested an upward adjustment for use of a dangerous weapon (the screwdriver). Whether the *government violated* the terms of a plea agreement is reviewed de novo. *See United States v. Anglin*, 215 F.3d 1064, 1067–68 (9th Cir.2000). Whether the facts demonstrate that there was a breach of a plea agreement is reviewed for clear error. *See United States v. Martinez*, 143 F.3d 1266, 1271 (9th Cir.1998).

The key provision from the plea agreement reads as follows:

> Both parties reserve the right to argue that additional specific offense characteristics, adjustments, and departures may be appropriate. Specifically, the government contends and you dispute that a 6–level increase for the specific offense characteristic of use of a firearm [U.S.S.G. § 2B3.1(2)(B)] applies to you in this case.

The first sentence is broad. The parties reserved the right to argue whatever "additional specific offense characteristics, adjustments, and departures may be appropriate." The second sentence, rather than precluding other arguments, specified one particular disagreement that the parties could litigate. The agreement does not state that this was the only issue the parties would litigate. Nothing in the plea agreement states that either party could *not* argue for *other* appropriate adjustments.

■ Williams argues that he understood the agreement to mean that the parties could dispute the gun enhancement. He contends there was no meeting of the minds. These arguments, however, are subjective. The court examines the language objectively. *See United States v. Gerace*, 997 F.2d 1293, 1294 (9th Cir.1993) ("the terms of the [plea] agreement, if disputed, are to be determined by objective standards") (citations and quotation marks omitted).

■ Moreover, Williams himself also argued for downward departures for medical condition, over-representation of criminal history, and family circumstances. He did not feel limited to disputing the firearm enhancement. To the extent the language is ambiguous, the court can look to extrinsic evidence. *See United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir.), *cert. denied*, 531 U.S. 1057, 121 S.Ct. 668, 148 L.Ed.2d 569 (2000). Williams' seeking of other departures is extrinsic evidence of how he interpreted the language of the plea agreement.

Further, neither the court nor the probation officer were bound by the plea agreement. Paragraph nine of the plea agreement provides that the government was free to supplement the stipulated facts with relevant information, and the court would make an independent determination of the calculations relevant to sentencing. Finally, to the extent there was surprise when the government raised the issue, the court appropriately reset matters to allow defendants as well as the probation office to respond both to the timing issue and to the merits.

In sum, we find no breach of the plea agreement by the government's request for a dangerous weapon enhancement.

### 3. Enhancement for use of dangerous weapon

■ Williams also attacks the merits of the district court's decision to enhance his sentence by 3 points for use of a "dangerous weapon." Specifically, he contends that someone else (co-defendant Lee) used the screwdriver and such use was not reasonably foreseeable to him.

This court has already decided this issue. *See United States v. Lavender*, 224 F.3d 939, 942 (9th Cir.2000), *cert. denied*, 531 U.S. 1098, 121 S.Ct. 828, 148 L.Ed.2d 711 (2001). Williams is precluded by the law of the case doctrine from challenging the district court's decision as to the foreseeability of the use of a dangerous weapon. *See United States v. Amlani*, 111 F.3d 705, 719 (9th Cir.1997) (applying law of case doctrine to bar defendant from raising same issue decided in co-defendant's appeal, where both were convicted at same trial).

■ Even if the argument were not barred, it would fail on the merits. The evidence was that the robbery was planned and orchestrated by the five co-defendants who participated together. Williams was in a similar position as his co-defendants. He did not, for example, perform an isolated function. Even assuming he did not enter the bank, it was certainly foreseeable to Williams that Lee would "brandish or possess a dangerous weapon." U.S.S.G. § 2B3.1(2)(E).

### 4. Personnel files of Los Angeles Police Department ("LAPD") officers.

Next, Williams contends that the government breached its duty under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) to obtain and disclose exculpatory information in confidential materials of the LAPD (internal investigation inter-

views of LAPD officers that the U.S. Attorney did not possess).

The government did in fact disclose the existence of the LAPD interviews. By letter of June 11, 1997, it notified defendants that as part of the LAPD's internal investigation, the LAPD had tapes of interviews with the officers involved. The government told defendants that the Los Angeles City Attorney had not given the interviews to the government and considered them confidential personnel matters.

Williams suggests that the government had an affirmative duty under *Kyles* to obtain such information from the LAPD's files. Williams did not properly preserve the issue for appeal and we need not reach the merits. *See, e.g., United States v. Sanchez,* 908 F.2d 1443, 1447 (9th Cir. 1990). Williams did not request or otherwise seek to obtain the LAPD interviews after the government disclosed their existence. Nevertheless, co-defendant Lavender *did* subpoena the records from the LAPD, and district court reviewed results of the internal investigation in camera. The district court examined the material to see if it was inconsistent with the probation officer's report (at least for Defendant Lavender). To the extent the internal investigation revealed information about the disputed use of a gun, the district court ultimately ruled *against* the government when it denied the 6–point enhancement for use of a firearm. If the internal investigation contained truly exculpatory information for any of the defendants, the district court would have seen it.·

#### 5. *Williams' physical condition*

Williams contends that the district court erred in failing to adjust downward for his physical condition—the fact and circumstances surrounding his injury during the robbery—under U.S.S.G. § 5H1.4 (allow-

ing downward departure for "extraordinary physical impairment").

■ The district court considered Williams' condition and the circumstances under which the injury occurred (as well as his family circumstances) but exercised its discretion not to depart. A district court's discretionary refusal to depart from the Sentencing Guidelines is not reviewable on appeal. *See United States v. Pinto,* 48 F.3d 384, 389 (9th Cir.1995).

#### 6. *Other grounds raised on appeal*

■ Williams contends that he is entitled to seek a downward departure because of improper conduct of the LAPD. Williams did not raise this at the trial level as a ground for a downward departure. The issue was waived. *See, e.g., United States v. Quesada,* 972 F.2d 281, 283–84 (9th Cir.1992) (failing to present request for downward departure to district court waives issue on appeal).

Likewise, we reject Williams' argument regarding a downward adjustment for his "minor role" in the robbery. Williams did not seek an adjustment for a minor role at the district court. The issue was waived. *See id.*

■ Similarly, Williams never claimed at the district court level that he was incompetent to sign the plea agreement. Williams never sought to withdraw his guilty plea at any point before this appeal. Nor did he question the validity of the plea agreement based upon its execution date. These issues were waived. *See Sanchez,* 908 F.2d at 1447.

AFFIRMED.